UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIAM CRUMP, JR., #238336,                 )
                                             )
                    Plaintiff,               )        Case No. 1:06-cv-20
                                             )
v.                                           )        Honorable Robert Holmes Bell
                                             )
CHRISTOPHER DARLING,                         )        _____**OPINION**_____
                                             )
                    Defendant.               )
_____         )

        This is a civil rights action brought *pro se* by a state prisoner pursuant to 42 U.S.C.

§1983.  Plaintiff is currently an inmate at the Baraga Maximum Correctional Facility located in

Baraga, Michigan.  Plaintiff filed his complaint on January 6, 2006 (docket # 1), and an amended

complaint on May 3, 2006.  (docket # 21).   Plaintiff's amended complaint is based on events

allegedly occurring in 2001 at the Ionia Maximum Correctional Facility ("ICF").   Sergeant

Christopher Darling of the Michigan Department of Corrections is the defendant.  Plaintiff asserts

that various actions by defendant in 2001 violated plaintiff's First Amendment rights and his rights

under the Fourteenth Amendment's Due Process Clause.  Plaintiff's amended complaint asks the

court to exercise supplemental jurisdiction over state-law claims under Michigan's Constitution and

two Michigan misdemeanor statutes:  MICH. COMP. LAWS ANN. §§ 752.11 and 750.478.  (docket #

21, ¶¶ 31, 32).  Plaintiff seeks an award of monetary damages against defendant in his individual

capacity.  (*Id.*, ¶ 4).

The matter is now before the court on defendant's Rule 12(b)(6) motion to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted.  (docket # 24).  Defendant argues, among other things, that plaintiff's federal claims are barred by the three-year statute of limitations, and that plaintiff fails to allege any viable state-law claims.   Plaintiff argues that his otherwise time-barred federal claims are saved by tolling of the statute of limitations because he filed an earlier lawsuit against defendant and pursued an unsuccessful appeal.  Plaintiff contends that he has alleged viable  state-law claims for damages against defendant in his individual capacity based on Michigan's Constitution and two criminal statutes.  Upon review, the court finds that Rule 12(b)(6) dismissal of plaintiff's amended complaint is appropriate.  Defendant's motion will be granted and plaintiff's amended complaint will be dismissed with prejudice.

## Applicable Standard

Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004).  The court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *See Roberts v. Ward*, 468 F.3d 963, 967 (6th Cir. 2006); *Flaim v. Medical Coll. of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005).  While the standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *See Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006); *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671-72 (6th Cir. 2006);

*National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005).  Courts are not required to conjure up unpleaded allegations.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Hall v. Beast*, 116 F. App'x 557, 559 (6th Cir. 2004).  The court need not accept as true legal conclusions or unwarranted factual inferences.  *See  Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003).  *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even the lenient treatment generally given *pro se*  pleadings has its limits.  *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).  "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under <u>some</u> viable legal theory."  *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see Southeast Texas Inns, Inc.*, 452 F.3d at 671-72; *Mezibov*, 411 F.3d at 716.

Plaintiff elected to support his complaint with exhibits.[1]   Plaintiff's exhibits have been considered in evaluating defendant's motion to dismiss, but have not converted the defendant's motion to dismiss into a motion for summary judgment.  *See* Fed. R. Civ. P. 10(c); *Benzon v.*

---

[1]Plaintiff's amended complaint superceded his initial complaint, and rendered the initial complaint a nullity.  The complaint before the court for Rule 12(b)(6) purposes is plaintiff's amended complaint.  (docket # 21).  *See Parks v. Federal Express Corp.*, 1 F. App'x 273, 277 (6th Cir. 2001); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306-07 (6th Cir. 2000) (collecting cases).  Either through oversight or as a means of avoiding the substantial cost of reproducing the hundreds of pages of exhibits that plaintiff attached to his initial complaint, plaintiff did not attach exhibits to his amended complaint.  However, throughout his amended complaint,  plaintiff refers back to the exhibits he filed with his initial complaint.   Because pleadings filed by *pro se* litigants are held to less stringent standards than those drafted by lawyers, *see Haines v. Kerner*, 404 U.S. at 520, and because plaintiff's amended complaint is unintelligible without reference to the exhibits, indulgently, the exhibits are considered by the court as if plaintiff had attached them to his amended complaint.  *See* Fed. R. Civ. P. 10(c).

*Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 603-04 (6th Cir. 2005); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) ("'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'") (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)); *see also Never Tell Farm, LLC v. Airdrie Stud, Inc.*, 123 F. App'x 194, 197 (6th Cir. 2005).

**Facts**

**1.      March 29, 2001**

Plaintiff alleges that on March 29, 2001, Sergeant Christopher Darling came to his cell, and threatened plaintiff with an "ass kicking" as soon as Darling had the chance because Darling had purportedly heard that plaintiff had filed a lawsuit against him.  (docket # 21, ¶ 6).  Plaintiff alleges that defendant Darling made this threat in retaliation for a lawsuit (*Crump v. Tyszkiewicz, et al.*, 1:01-cv-72 (W.D. Mich.)) and 3 grievances (ICF-0001-404-71i, ICF-0002-692-17i, and ICF-0003-819-22z) that plaintiff had filed.  (docket # 21, ¶ 6, referencing docket # 1, Exs. 1, 2, and 9).

Plaintiff's grievances had been filed more than a year before defendant's alleged verbal threat of March 29, 2001.  By way of background, on January 25, 2000, Sergeant Darling had issued a major misconduct citation against plaintiff after plaintiff had threatened to make Darling eat plaintiff's feces.  Plaintiff was convicted of this major misconduct.  Plaintiff's conviction and resulting forfeiture of good time credits have never been overturned.[2]  On January 26, 2000, one day

------

[2]Plaintiff filed a lawsuit 2002 naming Sergeant Darling and others as defendants, asserting a variety of claims, including retaliation claims.  *See Crump v. Palmer, et al.*, 1:02-cv-385 (W.D. Mich.).  On January 25, 2000, plaintiff was charged with, and thereafter convicted of, making a threat to make Sergeant Darling eat feces.  As a result of this major misconduct conviction, plaintiff

after receiving the above-referenced major misconduct citation from defendant, plaintiff filed grievance number ICF-0001-404-17i against various guards at ICF, including defendant, claiming that on January 24 and 25, 2000, a violation of a policy on regarding the frequency of top-of-bed (T.O.B.) breaks had occurred. (docket # 1, Ex. 1). This grievance was filed fifteen months before defendant's alleged threat of March 29, 2001. Grievance number ICF-0002-692-17i was similarly remote in time, having been filed by plaintiff on February 19, 2000. This grievance was against Sergeant Palmer and defendant Darling claiming that on January 25, 2000, the guards had falsely accused plaintiff of threatening to throw fecal matter at them in order to avoid their duty of cleaning plaintiff after plaintiff had defecated on himself. (docket # 1, Ex. 2). The third grievance, ICF-0003-819-22z concerned plaintiff's being restrained on February 28 and 29, 2000, and was primarily directed against Sergeant Palmer, but did make a passing reference to Sergeant Darling. Plaintiff pursued an unsuccessful lawsuit regarding these events, *Crump v. Palmer, et al.*, 1:02-cv-385 (W.D. Mich.), which is described in greater detail in footnote number 2.

   The lawsuit that plaintiff currently alleges served as the catalyst for a retaliatory threat by defendant is *Crump v. Tyszkiewicz*, et al., No. 1:01-cv-72 (W.D. Mich. 2001). (docket # 21, ¶

---

forfeited good time credits. The court found that defendant Darling was entitled to judgment in his favor as a matter of law on plaintiff's purported First Amendment retaliation claim against defendant because it necessarily implied the invalidity of plaintiff's major misconduct conviction for threatening behavior, and because plaintiff's conviction had never been overturned, he failed to state a cognizable claim under 42 U.S.C. § 1983. (9/9/2003 Op., at 19). On September 30, 2003, the court granted defendants' motion for summary judgment and entered judgment in favor of all defendants. Plaintiff subsequently filed a motion for reconsideration, which the court denied. Plaintiff filed a notice of appeal. On March 25, 2005, the United States Court of Appeals for the Sixth Circuit issued its decision affirming this court's judgment. *See Crump v. Palmer, et al.*, No. 03-2457 (6th Cir. Mar. 25, 2005). Claim preclusion bars any claim by plaintiff against defendant Darling related to plaintiff's major misconduct conviction for threatening Sergeant Darling on January 25, 2000.

6, referencing docket # 1, Ex. 9).  The lawsuit in question was never served on Sergeant Darling, or any other named defendant.  Plaintiff filed the complaint on January 31, 2001.  The complaint was dismissed by court order on May 7, 2001, prior to service on any defendant.  (docket # 1, Ex. 9).

On March 30 and 31, 2001, plaintiff filed grievances against defendant regarding defendant's purported verbal threat of March 29, 2001.  (Grievance Nos. ICF-01-04-1205-17A and ICF- 01-04-1204-17B).  These grievances were combined, and the Step I response denying the grievances is dated April 18, 2001.  The Step II and Step III responses are dated May 24, 2001, and August 3, 2001, respectively.  (docket #1, Ex. 4, referenced in ¶ 5(a), docket # 21).

On March 19, 2002, plaintiff filed his complaint against defendant in *Crump v. Darling*, 1:02-cv-182 (W.D. Mich.).  Among the allegations in plaintiff's complaint was a claim that defendant had verbally threatened plaintiff on March 29, 2001, in retaliation for plaintiff's exercise of his First Amendment rights.  On June 14, 2002, defendant was served with process.  On September 11, 2002, defendant filed a motion to dismiss plaintiff's complaint.  Thereafter, plaintiff filed a series of motions requesting various forms of relief, including extensions of time within which to file his response.   On July 17, 2003, the court issued an opinion and an accompanying judgment.  The court found that plaintiff had exhausted a First Amendment retaliation claim against defendant based on the March 29, 2001 incident.  (7/17/03 Op. at 8).  The complaint was dismissed without prejudice on July 17, 2003 because plaintiff had not exhausted other claims.  (*Id.*).  Plaintiff pursued an unsuccessful appeal.  On July 8, 2005, the United States Court of Appeals for the Sixth Circuit entered an order affirming this court's judgment.  *See Crump v. Darling*, No. 03-2086 (6th Cir. July 8, 2005).

2.      **March 31, 2001**

On March 31, 2001, Corrections Officer Judkins issued a major misconduct report

against plaintiff.  Officer Judkins described plaintiff's offending behavior as follows:

> On the above date [March 31, 2001] and time prisoner Crump #238336 was yelling, "I'm going to kill all you white bitches that come to work in Unit 2."  Crump was yelling these remarks at staff that were walking down the sidewalk by Unit 2.  I count 2 windows down from the end of the unit.  I also heard and [saw] him yelling out his window.  I believe that if given the chance Crump would carry out his threats to harm staff.  Crump's window was the only window opened on A-Base Unit 2.

(docket # 1, Ex. 5).  On April 19, 2001, a hearing officer found plaintiff guilty of this major

misconduct charge.  (*Id.*, Ex. 5(a)).  Plaintiff admits that he lost good time credits as a result of this

conviction.  (docket # 21, ¶ 9).  Paragraph 9 of plaintiff's amended complaint, set forth verbatim

below, alleges that defendant Darling participated in Judkins' issuance of this "false" misconduct:

> On 3-31-01 Darling told Crump, "Now it's my turn, you're going on window restriction" then he yelled to c/o Judkins Stating "Yeah! it's open let's seal it, ha ha I told you bitch I always get back and i'm not finished" c/o Judkins then wrote Crump a falsified Threatening Behavior misconduct and Crump was placed on 30 days Punitive segregation and Crump also lost good time.  Exhibit # 5 [Aff'd Erby ¶ 6, Aff'd Crump ¶ 5].

(docket # 21, ¶ 9).  Plaintiff has not alleged that this major misconduct conviction has been

overturned.

3.      **April 9, 2001**

Plaintiff alleges that around 2:30 p.m. on April 9, 2001, defendant came to plaintiff's

cell door,  subjected plaintiff to a series of racial slurs, and then made the following statement: "I

haven't gotten your complaint from the courts yet but when they throw that shit out I'm going to

really have your ass." (docket # 21, ¶ 12). Plaintiff states that later on April 9, 2001, when plaintiff returned to his cell from the prison's recreation yard, he found that "his cell had been searched, or ransacked" and that "property both legal and personal was either missing, destroyed or thrown all over the cell." (*Id.*, ¶ 13). Plaintiff alleges that he was missing the following items: photographs, "4 large legal envelopes of pending legal documents and other legal research and exhibits, 25 stamped envelopes, 4 books and 6 magazines." (*Id.*). Plaintiff alleges that he was "immediately informed" by others who personally witnessed defendant Darling tearing paperwork, throwing it around plaintiff's cell, and carrying away several large legal envelopes. (*Id.*, ¶ 14; *see* Crump Aff., ¶ 10, docket # 1). Plaintiff claims that defendant Darling came to his cell on April 9, 2001, and stated, "Crump I hope you like the remodeling, I know I did a good job." (docket # 21, ¶ 15). Plaintiff states that on April 10, 2001 he informed Sergeant Scott of the missing property, and that Scott returned the missing photographs. (*Id.*, ¶ 17).

Plaintiff alleges that the missing legal exhibits "were being prepared for the Amending of the complaint" and a "MOTION FOR RECONSIDERATION" which purportedly caused plaintiff "to be unable to appeal his [unspecified] issues" in *Crump v. Tyszkiewicz*, et al., No. 1:01-cv-72 (W.D. Mich.).[3] (docket # 21, ¶ 19). Plaintiff retained a copy of this court's 13-page opinion and judgment in *Crump v. Tyszkiewicz*, et al., No. 1:01-cv-72, having attached a copy of the

---

[3]Plaintiff never filed a notice of appeal in *Crump v. Tyszkiewicz*, or a post-judgment motion pursuant to Rule 4 of the Federal Rules of Appellate Procedure requesting an extension of time or any other form of relief available under that rule. Plaintiff's post-judgment motion practice in that case was restricted to seeking relief from the court's order requiring him to pay the applicable filing fee.

court's opinion and judgment as exhibits to his complaint in this case.  (docket # 1, Exs. 9 and 9(a)-(m)).

Plaintiff alleges that on April 10, 2001, he gave a grievance to Sergeant B. Scott regarding defendant's April 9, 2001 conduct.  (docket # 21, ¶¶ 15, 16, referencing Crump Aff. ¶ 12).  Plaintiff states that this grievance "was filed at Step 1 and never responded to at that step, and it was continued through the process at all steps even though no response was provided."  (docket # 21, ¶ 5(b).  This court has already examined plaintiff's efforts to exhaust his claims concerning defendant's April 9, 2001 conduct.  *See Crump v. Darling*, 1:02-cv-182 (W.D. Mich.) (7/17/2003 Op. at 6-7).  Plaintiff cannot avoid judicial admissions stemming from his verified complaints in his other lawsuits against defendant by conveniently recasting them.[4]  In Case No. 1:02-cv-182 plaintiff represented to the court that when he did not receive a response to his April 10, 2001 grievance he wrote a letter on May 1, 2001 requesting a response.  When plaintiff received no response to his letter, on May 1, 2001 he requested a Step II response.  When he received no Step II response, he "sent a kite to Step III requesting a response" and attached new Step I grievance dated June 1, 2001.  On June 14, 2001, the MDOC returned plaintiff's Step I grievance.  The MDOC did not process plaintiff's June 2001 grievance because it was untimely.  (Op., 6; *see also* docket # 1, Ex. 11,

_____

[4] This court's taking of judicial notice of its own records is appropriate, *see Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999), and *Taylor v. United States*, 161 F. App'x 483, 485-86 (6th Cir. 2005), particularly given the repeated references to selected portions of his earlier lawsuits throughout his amended complaint.  Plaintiff's earlier statements constitute judicial admissions.  Plaintiff could not introduce evidence contrary to his judicial admissions.  *See Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996).  Therefore, plaintiff's efforts to exhaust the April 10, 2001 grievance are as determined by Judge McKeague.

referenced in docket # 21, ¶ 5(b)).  Judge David W. McKeague, formerly of this court and currently

serving on the United States Court of Appeals for the Sixth Circuit, found that plaintiff failed to take

appropriate steps to exhaust his available administrative remedies concerning defendant's purported

conduct of April 9, 2001.  Judge McKeague found that the June 1, 2001 grievance did not exhaust

plaintiff's remedies because it was untimely, citing *Wright v. Morris*, 111 F.3d 414, 417 n. 3 (6th Cir.

1997) (prisoner may not file administrative grievance in an untimely manner and thereafter claim

that the remedies are time barred and not available.").  (Op., 7).  Judge McKeague found that

plaintiff did not take appropriate steps to exhaust his April 10, 2001 grievance:

> [P]laintiff did not take appropriate steps to exhaust his grievance.  A plaintiff "must continue to the next step in the grievance process within the time frame set forth in the regulations if no response is received from prison officials or if the prisoner is not satisfied with the response." *Hartsfield [v. Vidor]*, 199 F.3d [305,] 309 [(6th Cir. 1999)].  "We have previously held that an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Id.*  If the grievance does not receive a timely Step I response, the grievant may appeal to Step II.  Similarly, if the grievant does not receive a timely Step II response, the grievant may appeal to Step III. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ T (effective Oct. 11, 1999 and Nov. 1, 2000).

> It is no excuse that plaintiff did not receive a response to a Step I or Step II grievance as plaintiff is required to pursue the grievance through all levels.  *See Hartsfield*, 199 F.3d at 309; MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ T.  If plaintiff did not receive a response to his Step I grievance within 15 days, then his recourse was to forward the grievance to Step II within 10 days after the response deadline expired.  *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ T-W, CC.  Here, assuming that plaintiff filed the grievance on April 10, 2001 as alleged, his recourse was to forward a copy of the grievance to Step II, not write a letter to the grievance coordinator on May 1, 2001 or to an administrative assistant on May 17, 2001.  *See* letters attached to Compl. as Exhs. 29, 29B and 29C.  Plaintiff's subsequent letters were not Step II or Step III appeals and were insufficient to exhaust his grievance.

(Op., 7-8).

On August 12, 2005, plaintiff filed a grievance concerning defendant's alleged actions of April 9, 2001.  (ICF-05-08-1160-28e).  On August 31, 2005, this grievance was denied as untimely at Step I pursuant to Policy Directive PD-03.02.130.  (docket # 1, Ex. 23).  The denial of the grievance was upheld at Steps II  and III.  (*Id.*).

**4.       June 24, 2001**

Paragraph 22 of plaintiff's amended complaint is set forth verbatim below:

On 6-24-01, or there about Darling told Crump while at his cell "your grievance and law suits are going to get you into a lot more trouble and that he (Darling) would be giving Crump's legal material away, Darling also stated, "Crump if you don't stop with the grievances you won't have any legal boxes to worry about".

(docket # 21, ¶ 22).  Plaintiff's amended complaint makes no mention of grievances or appeals related to defendant's statements.

**5.       June 30, 2001 and July 13, 2001**

Plaintiff alleges that on June 30, 2001, when he went to the day room, he found that a box that had held "legal materials" was empty.  (docket # 21, ¶ 24).  On July 1, 2001, plaintiff filed grievance number ICF-0107-2320-19D which states verbatim[5] as follows:

When I came out for . . . Day room on 6-30-01 all of my excess legal property was missing. I had 1 gray Cortech box that was completely full C/O Bush . . . and will contest to this fact, Sgt. B. Scott will as well.  My property was last seen by me on 6-23-01 and seal # 134726,

---

[5]Plaintiff's handwriting tends to run to the edge of the grievance form, and occasional words or portions of words do not appear on the copies plaintiff attached to his complaint.  Ellipsis have been inserted within the above quoted grievance to identify those areas.

C/O Bush was the officer the returned my property to the carrol, between 6-23-01 and 6-30-01 my property was stolen or lost, while in the control of M.D.O.C. employees.  C/O's Goldstein, Austin, H. Roberts, R. Roberts, J. Smith, Sgt. Van Amberg, Sgt. Crowley and Sgt. B. Scott were all of the knowledge that my Cortech box was completely full of legal material, most of my property receipts and disbursement forms were stored in my box with my other records.  All of my legal exhibits, transcripts and medical records and past and present grievances.  Mothers medical records and other important records and receipts.  Prisoner lost 7 law books, 1 Georgetown Law Journal, Federal Rules Civil Procedures, Complete Manual of Criminal Forms, Criminal Procedures 1994 Vols 1,2 and 3, Corrections in America, 3 legal pamphlets, Resource Guide for Managing Prisoners, Impact of the Federal Drug Aftercare Program, all of the medical records for 1984-1985- all summaries, 44 magazines (to be sent to the property room), 2769 pages of legal photocopies, 7 extra large legal envelopes of assorted documents, transcripts of cases # 93-11111, 93-67129 and 94-3294, pre-sentence records for 93-1111, 93-67129 and 94-3294, school records and GED documents.  This is a violation of the 14th Amendment under the Procedural and Substantive Due Process Clause.  Wherefore:

Prisoner request the production of witness' statements to attached questions C/O J. Smith, Sgt. VanAmberg, Sgt. Crowley, Sgt. B. Scott, C/O Austin, H. Roberts and C/O Goldstein, C/O Bush, Prisoner request copies of his property receipts from 3/13/98 until most recent, property room log from 6-23-01 until 6-30-01 of all property that was removed from the unit's property carrol, list of all staff worked in 2 unit and the log book from 6-23-01 until 6-30-01 showing any and all property movement in an out of 2 unit.  PD 01.06.110 sec. (6).  Property receipt for 3-29-01.

2 PAGES OF QUESTIONS ATTACHED PLEASE INTERVIEW witness' and obtain Documents Requested.

(docket # 1, Ex. 12).  The Step I grievance response is dated July 20, 2001. (docket #1, Ex. 12(c)).

Plaintiff's Step II appeal is dated July 28, 2001, and on that date plaintiff stated as follows:

It has been established that my property was lost and reimbursement was recommended at Step I.  I would like for my lost items to be repurchased if possible.  Items that cannot be repurchased I would like to be reimbursed for them.  I would like copies of all grievances and misconducts since 1994, transcripts for cases 93-67129, 94-3294, 93-11111 as well as my pre-sentence reports, and school records, GED document to be given to my [sic] by I.C.F. since the [sic] have access to these items and I would like all other items to be repurchased or reimbursed and 7 law books replaced.  Most receipts were lost.

-12-

(docket # 1, Ex. 12(e)).  Plaintiff's July 28, 2001 Step II grievance appeal made no mention of defendant Darling, much less any reference to any statement made by Darling on July 13, 2001 concerning this box of materials.  The Step II response is dated September 4, 2001.  (docket # 1, Ex. 12(f)).  Plaintiff's Step III appeal is dated October 26, 2001, and it states as follows:

> I was not reimbursed by the Prison Inmate Benefit Fund.  It has been clearly established that my items were missing and it was through the sole fault of the M.D.O.C.  I informed the interviewers at Steps I and II that the only proof I have is a few receipts.  If I am reimbursed for the lost property which is legal property (I will not be charged for other debts with the funds or other items reimbursed for!) [sic].

(docket # 1, Ex. 12(e)).  Plaintiff's October 26, 2001 Step III appeal makes no mention of defendant Darling or any statements purportedly made by Darling on July 13, 2001.  (*Id.*).  The Step III response is dated December 11, 2001.  (docket # 1, Ex. 12(l)).

Plaintiff sought reimbursement from the State of Michigan for the missing items through the State's administrative process.  At the conclusion of the State's process, plaintiff's claims were denied.  (docket # 1, Ex. 16).

Plaintiff's amended complaint alleges that on July 13, 2001, defendant Darling came to plaintiff's cell and made this statement:  "Do you want to come out for legal access, oh! I forgot I trashed that shit in that box, you won't miss it I sure won't."  (docket # 21, ¶ 26).  Approximately 4 years later, on June 15, 2005, plaintiff drafted grievance number ICF 0506-0931-28A (docket # 1, Ex. 17).  On June 13, 2005, this grievance was rejected as duplicative of grievance number ICF-0107-2320-19D.  (docket # 21, ¶ 5(d).  Attached to plaintiff's complaint is a document labeled as a Step II appeal.  (docket # 1, Ex. 17(e)).  The document is dated July 27, 2005.  Plaintiff attached

a letter dated August 25, 2005, in which plaintiff stated that he had mailed his Step II appeal on July 27, 2005 (docket # 1, Ex. 17(f)).  Plaintiff alleges in a verified amended complaint that his Step II appeal "was also rejected in accordance with the Step 1 rejection."  (docket # 21, ¶ 5(d)).  Another document is dated September 8, 2005, and is labeled plaintiff's "Step III Appeal to the Director['s] Office."  (docket # 1, Ex. 17(g)).  Throughout this purported Step III appeal, plaintiff states that he never received a Step II response.  Finally, plaintiff attached as an exhibit a letter dated October 6, 2005, wherein plaintiff stated that he had mailed his Step III appeal on September 8, 2005, and that if plaintiff did not receive a Step III response in 10 business days he would proceed to federal court. (docket # 1, Ex. 17(h)).  Plaintiff did not file this lawsuit until January 6, 2006.  Plaintiff did not include a Step III response among his hundreds of exhibits, but has represented in his verified amended complaint that on an unspecified date the grievance had been rejected at Step III for the same reasons it had been rejected at Steps I and II.  (docket # 21, ¶ 5).

## Discussion

**I.     Federal Claims**

1.      Plaintiff's March 31, 2001 Major Misconduct Conviction

Plaintiff's amended complaint fails to state a claim upon which relief can be granted with regard to the allegedly false major misconduct of March 31, 2001.  Plaintiff's major misconduct conviction has never been overturned or expunged and plaintiff's forfeited good time credits have never been restored.   Plaintiff's purported section 1983 claim is barred until such time plaintiff is successful in having this conviction overturned and his forfeited good time credits restored.  *See*

-14-

*Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005); *Edwards v. Balisok,* 520 U.S. 641, 648 (1997); *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994).

2.   <u>Missing Property</u>

Plaintiff alleges that on April 9, 2001, and June 30, 2001, defendant destroyed or took various items of plaintiff's personal property.   A state prisoner asserting a procedural due-process claim arising from a random and unauthorized act of a state officer must first plead and prove the absence of an adequate state remedy.   *See Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995);   *see also Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004); *Scott v. Norton*, 96 F. App'x 378, 380 (6th Cir. 2004); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003).   If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."   *Parratt*, 451 U.S. at 537.   This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.   *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).   The Sixth Circuit recognizes that Michigan's available post-deprivation remedies are more than adequate to compensate plaintiff for any loss of personal property suffered as a result of defendant's alleged actions.   *See Copeland v. Machulis*, 57 F.3d at 479; *see also Carlton v. Jondreau*, 76 F. App'x 642, 643 (6th Cir. 2003).   Plaintiff's complaint fails to state a due process claim against defendant.

3.     Interference with Access to Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury" in a specific case. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir.1999). The actual injury requirement is not satisfied by just any type of frustrated legal claim. The actual injury must be connected to direct pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." *Lewis*, 518 U.S. at 354; *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("'Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.'") (quoting *Lewis v. Casey*, 518 U.S. at 353); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *see also Fitts v. Sickler*, No. 04-2232, 2007 WL 419623, at * 5 (6th Cir. Feb. 8, 2007); *Smith v. Campbell*, 113 F. App'x 85, 86 (6th Cir. 2004); *Colvin v. Schaublin*, 113 F. App'x 655, 656 (6th Cir. 2004). Plaintiff did not and could not have suffered any "actual injury" with regard to case number 1:01-cv-72 based on defendant's alleged actions of April 9, 2001 or June 30, 2001. Plaintiff had filed that complaint on January 1, 2001, and amended it before the court had completed initial screening. On May 7, 2001, plaintiff's complaint, as amended, in case number 1:01-cv-72 was dismissed by the court on initial screening because plaintiff had not exhausted his administrative remedies as required by the Sixth

-16-

Circuit law then prevailing. Paragraph 19 of plaintiff's amended complaint alleges, "Crump's legal exhibits and pending documents that were being prepared for amending the complaint [were] stolen along with the MOTION FOR RECONSIDERATION and this caused Crump to be unable to appeal his issues." (docket # 21, ¶ 19). There was no need or basis for any motion for "reconsideration" on April 9, 2001. This court had not yet issued its initial screening opinion. Although plaintiff states that he would have amended his complaint in some unspecified respect, plaintiff could not have filed a second amended complaint without leave of court and under the Sixth Circuit jurisprudence then in effect would not have been permitted to amend to attempt to correct the defect that had resulted in the dismissal of his lawsuit.[6] He has not specified any issue that he was prevented from raising in the United States Court of Appeals for the Sixth Circuit. Plaintiff's amended complaint fails to state a First Amendment claim of interference with his access to court.

4.   Retaliation

The bulk of plaintiff's allegations are devoted to assertions that actions taken by defendant in 2001 were the result of unlawful retaliation. Plaintiff filed his complaint[7] on January 6, 2006. Defendant's motion seeks dismissal of plaintiff's claims for failure to state a claim on the

---

[6]See Baxter v. Rose, 305 F.3d 486, 488 (6th Cir. 2002) and McGore v. Wrigglesworth, 114 F.3d 601, 612 (6th Cir. 1997). Jones v. Bock, 127 S. Ct. 910 (2007) now requires a different procedure for screening prisoner complaints.

[7]Although plaintiff filed an amended complaint on May 6, 2006 (docket # 21), there is no need to further complicate matters by undertaking claim-by-claim comparison of the claims asserted in the now superceded initial complaint and plaintiff's amended complaint. Defendant's arguments that plaintiff's claims are time-barred are based on the January 6, 2006 filing date. (Defendant's Brief at 3, 5 docket # 25).

basis that they are barred by the three-year statute of limitations.  Plaintiff's section 1983 claims against defendant are subject to a three-year statute of limitations. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) ("We have held that the applicable statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims.") (citing MICH. COMP. LAWS § 600.5805(10)); *see also Xu v. Michigan State Univ.*, 195 F. App'x 452, 455 (6th Cir. 2006); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986).

### A.      Accrual

An initial determination is the date on which each of plaintiff's retaliation claims against defendant accrued.[8]   "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 127 S. Ct. 1091, 1095 (2007). "[F]ederal standards govern when the statute [of limitations] begins to run." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *see Wilson v. Garcia*, 471 U.S. 261, 267 (1985).  "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages.  The cause of action accrues even though the full extent of injury is not then known or predictable." 127 S. Ct. at 1091.  The statute of limitations begins to run when the plaintiff knows or has reason to know of the act providing the

---

[8]The elements of a retaliation claim under the  First Amendment retaliation are: (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Lustig v. Mondeau*, No. 05-1905, 2006 WL 3253496, at * 7 (6th Cir. Nov. 8, 2006); *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 438 (6th Cir. 2006).

basis for his injury has occurred. *See Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1997); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); *see also Boomer v. Bass*, 76 F. App'x 62, 63 (6th Cir. 2003). All plaintiff's retaliation claims are based on alleged injuries suffered on the date of defendant's purported actions. The only arguable exception is plaintiff's allegation that defendant confessed on July 13, 2001, to having "trashed" plaintiff's legal materials 2 weeks earlier on June 30, 2001.

B.    PLRA

All plaintiff's federal claims against defendant are subject to the statutory requirements of the Prison Litigation Reform Act (PLRA). The PLRA has statute of limitations consequences for plaintiff's claims against defendant. The PLRA states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.* in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*. 126 S. Ct. 2378, 2382 (2006). "The PLRA contains a variety of provisions designed to bring this litigation under control. . . . The centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision." 126 S. Ct. at 2382 (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Under the PLRA "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." 126 S. Ct. at 2382. "Prisoners must now exhaust all 'available' remedies,

-19-

not just those that meet federal standards.  Indeed, as we held in *Booth* [*v. Churner*, 532 U.S. 731, 734 (2001)], a prisoner must now exhaust administrative remedies even where the relief sought -- monetary damages -- cannot be granted by the administrative process."  126 S. Ct. at 2382-83. "Finally, exhaustion of available remedies is required for any suit challenging prison conditions, not just for suits under § 1983."  126 S. Ct. at 2383 (citing *Porter v. Nussle*, 534 U.S. at 524).

In *Woodford v. Ngo*, the Supreme Court held that "proper exhaustion" is required, meaning that a prisoner must complete the administrative review process in accordance with "the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." 126 S. Ct. at 2384.  The Court observed that exhaustion provides the agency with an opportunity to correct mistakes before being haled into court and discourages disregard for applicable procedures. 126 S. Ct. at 2385.  It promotes efficiency because claims can generally be resolved more quickly and economically in administrative proceedings than in federal court.  "Statutes requiring exhaustion serve a purpose when a significant number of aggrieved parties, if given the choice, would not voluntarily exhaust.  Aggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons.  Although exhaustion promotes overall efficiency, a party may conclude - correctly or incorrectly - that exhaustion is not efficient in that party's particular case.  In addition, some aggrieved parties may prefer to proceed directly to federal court for other reasons, including bad faith."  126 S. Ct. at 2385.  "A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."  126 S. Ct. at 2388.  "Proper exhaustion demands compliance with an

-20-

agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." 126 S. Ct. at 2386. "Proper exhaustion reduces the quantity of prisoner suits because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court. The deadlines for filing administrative grievances are "generally not very long." 126 S. Ct. at 2389. Proper exhaustion[9] improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." 126 S. Ct. at 2388.

In *Jones v. Bock*, 127 S. Ct. 910 (2007), the Supreme Court reiterated that, "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." 127 S. Ct. at 918-19 (citing *Porter*, 534 U.S. at 524). "All agree that no unexhausted claim may be considered." 127 S. Ct. at 923. The Supreme Court observed that ""[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." 127 S. Ct. at 921 (quoting *Leveto v. Lapina*, 258 F. 3d 156, 161 (3d Cir. 2001)). In this

---

[9]The Supreme Court was very clear that the exhaustion requirement was not "jurisdictional." "42 U.S.C. § 1997e(c)(2) [] permits a district court to dismiss certain prisoner claims 'without first requiring exhaustion of administrative remedies.'" 126 S. Ct. 2391. Section 1997e(c)(2) "serves a useful function by making it clear that the PLRA exhaustion requirement is not jurisdictional, and thus allowing a district court to dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies." 126 S. Ct. at 2378.

regard, the Supreme Court specifically mentioned the statute of limitations and cited *Lopez-Gonzalez v. Municipality of Comerio*, 404 F.3d 548, 551 (1st Cir. 2005) (dismissing a complaint as barred by the statute of limitations under Rule 12(b)(6)). 127 S. Ct. at 921. The Court went on to hold that lack of exhaustion is an affirmative defense. 127 S. Ct. at 921. Dismissal for lack of exhaustion pursuant to Rule 12(b)(6) is appropriate when the absence of exhaustion is apparent from the complaint itself. The Supreme Court held that when a lower court encounters a complaint containing both exhausted an unexhausted claims, the unexhausted claims are to be dismissed and the court is to proceed to address the exhausted claims. 127 S. Ct. at 924. The Supreme Court concluded its opinion with an expression of sympathy for lower courts charged with "managing their dockets and attempting to separate, when it comes to prisoner suits, not so much wheat from chaff as needles from haystacks." 127 S. Ct. at 926. Thus, after *Jones*, lower courts must shoulder the burden of distinguishing between a prisoner's exhausted and unexhausted claims.

      C.     Tolling

          1.     Tolling rooted in the PLRA's administrative exhaustion requirement

The Sixth Circuit has held that the statute of limitations is tolled during the period a prisoner is in the process of properly exhausting his available administrative remedies. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Plaintiff's retaliation claim based on defendant's alleged verbal threat of March 29, 2001 (to give plaintiff an "ass kicking" as soon as defendant had the chance) was the subject of plaintiff's March 30, 2001 grievance. Plaintiff pursued his available

remedies through the grievance process which eventually resulted in the Step III decision of August 3, 2001, upholding the denial of plaintiff's grievance.   Plaintiff filed this lawsuit on January 6, 2006, far beyond the three-year statute of limitations period, absent tolling of the statute of limitations.

Next, plaintiff alleges that on April 9, 2001, defendant threatened to "have [plaintiff's] ass" after a court threw out a complaint that defendant had not yet received, and in fact the complaint was never served on any defendant.[10]   Plaintiff also alleges that on April 9, 2001, defendant destroyed plaintiff's legal property. Judge McKeague previously determined that plaintiff did not properly exhaust his available administrative remedies.  On August 12, 2005, plaintiff filed a grievance concerning defendant's alleged actions of April 9, 2001.  Plaintiff's grievance (ICF-05-08-1160-28e) was denied as untimely.  The denial of the grievance was upheld at Steps II and III, the Step III response dated November 16, 2005, noting, "Grievant did not provide a viable reason why he waited over four years to file a grievance on the alleged incident." (docket # 1, Ex. 23(j)). Plaintiff's allegations that defendant's conduct of April 9, 2001, constituted retaliation fail to state a claim upon which relief can be granted because plaintiff failed to properly exhaust his available administrative remedies.

Plaintiff alleges that on June 24, 2001, defendant stated, "Your grievance and law suits are going to get you into a lot more trouble," and that Darling indicated that he would be giving plaintiff's legal material away.  Plaintiff alleges that on the same date defendant said, "Crump if you

---

[10]Given the Rule 12(b)(6) posture of this case, the court must put aside the extraordinary implausibility of a "retaliatory threat" under the alleged circumstances.

don't stop with the grievances you won't have any legal boxes to worry about." (docket # 21, ¶ 22). Plaintiff's complaint is devoid of allegations concerning exhaustion of administrative remedies relating to this statement. Thus, plaintiff has not shown any basis for tolling rooted in his exhaustion of administrative remedies. Even assuming that plaintiff had filed a timely grievance and pursued an appeal through a Step III decision, a Step III decision would have been issued on or before September 20, 2001. *See* Policy Directive 03.03.130, ¶¶ T-W. The three-year statute of limitations on this retaliation claim expired long before plaintiff filed his January 6, 2006 complaint, absent tolling.

Plaintiff's amended complaint alleges that on June 30, 2001, defendant destroyed, stole, or gave away plaintiff's box of legal property, and that defendant's actions were in retaliation for plaintiff's grievances. Plaintiff filed a grievance concerning his missing papers and other personal property on June 30, 2001. (ICF 01-07-2320-19D). Plaintiff states that during the Step I interview with Sergeant Dykehouse plaintiff mentioned defendant's alleged confession of July 13, 2001, in which defendant Darling purportedly came to plaintiff's cell and made the statement: "Do you want to come out for legal access, oh! I forgot I trashed that shit in that box, you won't miss it I sure won't." (docket # 21, ¶¶ 26, 27). Plaintiff claims that Dykehouse would not permit Sergeant Darling to be added to this grievance. Plaintiff's Step II and III appeals made no such assertion. The Step II and III appeals made no mention of defendant. The Step III appeal response is dated

-24-

December 11, 2001.  The statute of limitations on this retaliation claim expired on of December 11, 2004, absent tolling.[11]

> 2.  Plaintiff's claim of entitlement to tolling
> under Mich. Comp. Laws Section 600.5856(a)
> and (b)

As shown in the preceding paragraphs, all plaintiff's retaliation claims are time barred absent a basis for further tolling of the three-year statute of limitations.  State law can provide a basis for tolling of the statute of limitations on a federal § 1983 claim.  *Wallace v. Kato*,  127 S. Ct. at 1091; *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989); *Board of Regents v. Tomanio*, 446 U.S. 478, 485 (1980).  The Supreme Court's *Tomanio* decision explained the reason for this rule:

> In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival and questions of application.  In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.

446 U.S. at 485-86 (citations omitted).  Federal Courts will reject a state tolling rule if the state rule is "inconsistent with" federal law.  446 U.S. at 485.

> (a)  Plaintiff's burden of demonstrating entitlement to
> tolling

Where, as here, a plaintiff's claims appear on their face to be barred by the applicable statute of limitations, Michigan law places the burden of proving entitlement to tolling of the statute

---

[11]This is unaltered by plaintiff's June 15, 2005,  grievance which was rejected as duplicative of grievance ICF 01-07-2320-19D that had been denied in 2001.  (docket # 1, Ex. 17).  A grievance filed after the statute of limitations has run would not restart the three-year limitations clock.

of limitations on the party claiming it.  *See Warren Consolidated Sch. v. W.R. Grace Co.*, 518 N.W.2d 508, 510 (Mich. Ct. App. 1994); *see also Hill v. PBG Mich. L.L.C.*, No. 268692, 2006 WL 2872581, at * 4 (Mich. Ct. App. Oct. 10, 2006).  Federal courts follow the State's allocation of burdens in this regard.  *See e.g., Harmon v. Patrolman's Benevolent Ass'n of New York*, 199 F. App'x 46, 48 (2d Cir. 2006)("Under New York Law, Harmon bears the burden of proof to demonstrate that an exception to the statute of limitation applies to his case."); *Knox v. Cook County Sheriff's Police Dep't*, 866 F.2d 905, 907 (7th Cir. 1988).  Federal law likewise places the burden of showing entitlement to tolling on the party claiming it.  *See Wasco Products, Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006).

The Michigan statute[12] that plaintiff bases his argument on states as follows:

> The statutes of limitations or repose are tolled in any of the following circumstances:
> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.
> (b) At the time jurisdiction over the defendant is otherwise acquired.

MICH. COMP. LAWS § 600.5856(a), (b).  Plaintiff argues that one of his previous lawsuits against defendant, *Crump v. Darling*, 1:02-cv-182, after it was served on defendant,[13] tolled the running of the statute of limitations under MICH. COMP. LAWS § 600.5856(a) and (b) until July 8, 2005, when the Sixth Circuit affirmed this court's judgment.  (docket # 31 at 2; docket # 32 at 1, 5-7).  In essence, plaintiff is now seeking the benefit of tolling because he filed a lawsuit against defendant,

---

[12]Plaintiff relies on the current version of the Michigan statute.

[13]Plaintiff's brief misleadingly states that service occurred "in March of 2002."  Service did not occur until June 14, 2002.

knowingly in violation of the PLRA's mandatory requirement that he exhaust his available administrative remedies. It is unnecessary to delve at any depth into plaintiff's other lawsuits to establish plaintiff's knowledge. The exhibits plaintiff attached to his complaint in this lawsuit conclusively establish plaintiff's knowledge of the PLRA's requirement that plaintiff exhaust his administrative remedies before filing a complaint in federal court. (5/7/2001 Op. at 7, Case No. 1:01-cv-72).

(b)     Michigan's Supreme Court would not permit tolling

The court must first determine whether, as a matter of state law, the Michigan Supreme Court would apply the general tolling statute cited above where the legislature, in this case Congress, has established a mandatory administrative exhaustion requirement for prisoners before a prisoner may file a federal claim and obtain judicial relief. Upon review, I find that the Michigan Supreme Court would not find tolling to be appropriate.

The two most recent decisions of the Michigan Supreme Court addressing MICH. COMP. LAWS § 600.5856 are *Burton v. Reed City Hosp. Corp.*, 691 N.W.2d 424 (Mich. 2005) and *Scarsella v. Pollack*, 607 N.W.2d 711(Mich. 2000). In *Scarsella*, Michigan's highest court found that the legislature's use of the word "shall" in the statutory requirement that an affidavit of merit be filed with a medical malpractice complaint meant that the affidavit requirement was "mandatory and imperative." 607 N.W.2d at 713. Given this legislative imperative, the Michigan Supreme Court held that for statute of limitations purposes, the mere tendering of a complaint without the required affidavit was insufficient to commence the lawsuit. *Id.* The court found that even though

-27-

the deficient complaint had been filed and served, Mich. Comp. Laws § 600.5856 did not toll the running of the statute of limitations.   The Michigan Supreme Court held that a contrary "interpretation would undo the Legislature's clear statement that an affidavit of merit 'shall' be filed with the complaint."  607 N.W.2d at 714.

The Michigan Supreme Court's decision in *Burton* is even more instructive.[14]  The State's highest court reversed a decision of the Michigan Court of Appeals that had relied on Mich. Comp. Laws §600.5856(a) to toll the statute of limitations on the plaintiff's prematurely filed complaint.  691 N.W.2d at 428.  The Michigan Supreme Court emphasized that, "the Legislature's use of the word 'shall' indicate[d] a mandatory and imperative directive."  691 N.W.2d at 428.  The plaintiff's complaint had been premature because the plaintiff had not complied with a statutory prerequisite to filing suit.[15]  691 N.W.2d at 429.  The Michigan Supreme Court found that legislation adopted to curb abusive medical malpractice litigation established "prerequisite condition[s]" to the commencement of such suits.  *Id.*  The Michigan Supreme Court held that the plaintiff's failure to comply with the statutory prerequisites to filing suit precluded the plaintiff's reliance on Mich. Comp. Laws §600.5856 to toll the statute of limitations.  691 N.W.2d at 429.  The plaintiff was not

---

[14]Plaintiff's brief is devoid of any reference to the Michigan Supreme Court's decisions in *Burton* and *Scarsella*.  The cases cited by plaintiff are generally of considerable vintage, and none involve claims subject to mandatory, statutory pre-filing requirements.

[15] "'Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.'"   691. N.W.2d at 427-28 (quoting MICH. COMP. LAWS §600.2912b).

entitled to tolling on his "prematurely filed complaint" and his claims were barred by the statute of limitations.  691 N.W.2d at 430.

It is extraordinarily unlikely that the Michigan Supreme Court would find any less of a "mandatory and imperative" prerequisite to filing suit in Congress's use of the term "shall" in the Prison Litigation Reform Act which amended 42 U.S.C. § 1997e to require that: "'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Michigan's own prison litigation reform act, effective November 1, 1999, has prohibited prisoners from filing civil actions until after the prisoner has exhausted all available administrative remedies.  MICH. COMP. LAWS § 600.5503(1) ("A prisoner shall not file an action concerning prison conditions until the prisoner has exhausted all available administrative remedies.)"; *see Anderson v. Myers*, 709 N.W.2d 171, 173 (Mich. Ct. App. 2005); *see also Neal v. Department of Corrections*, Nos. 253543, 256506, 2006 WL 448712 at * 1 (Mich. Ct. App. Feb. 23, 2006); *Simmons v. County of Wayne*, No. 230936, 2002 WL 1498802, at * 1 (Mich. Ct. App. July 12, 2002).  The statutory requirements of the PLRA and Michigan's malpractice reforms are legislative enactments adopted in the wake of a litigation crisis involving a particular type of lawsuit.  The state courts have never given a plaintiff the benefit of tolling where suit is brought prematurely in violation of section 600.5503(1).  Michigan's Supreme Court would hold that Mich. Comp. Laws §600.5856 does not toll the statute of limitations where,[16]

_____

[16]Plaintiff has not claimed, and is obviously not entitled to any form of equitable tolling, having filed repeated complaints in this court containing unexhausted claims with knowledge that

-29-

as here, the prisoner elected to file his lawsuit in direct contravention of the mandatory statutory

prerequisite that he exhaust his available administrative remedies before filing a lawsuit.

### (c)   Tolling would be inconsistent with federal law

Assuming *arguendo* that the Michigan Supreme Court would reach a different

conclusion and allow tolling under state law of a prisoner's claim filed in contravention of the

mandatory statutory prerequisite of exhaustion, federal courts would not permit  permit tolling on

a federal cause of action because tolling would be contrary to federal law by effectively encouraging

the very litigation abuses the PLRA was enacted to curb.  Prisoners would be encouraged to file

prolix complaints covering lengthy time periods and containing as many federal claims as possible

against as many defendants as possible, with purposeful disregard for the PLRA's administrative

exhaustion requirement, making it virtually impossible for the court to conduct initial screening.

Months, and in cases like this years later, the district court charged with separating the "needles from

haystacks" in the prisoner's voluminous complaint at the motion practice level would necessarily

dismiss the unexhausted claims.[17]   Thereafter, the prisoner plaintiff could file a new lawsuit or

lawsuits in similarly abusive fashion without concern for any adverse statute of limitations

---

such unexhausted claims cannot be brought by a prisoner subject to the PLRA's statutory
requirements.

[17]Here, it has taken in excess of 30 pages to address allegations made against a single
defendant and a claim to an entitlement to tolling based on an earlier lawsuit in this court.  The task
becomes exponentially more difficult, if not impossible, as the number of defendants, the number
of earlier lawsuits and the number of courts involved (state and/or federal) in which earlier lawsuits
were filed increases.

consequences or pursue a meritless appeal to garner additional time.   Congress assuredly did not intend that prisoners be rewarded with the benefit of tolling and being allowed to pursue otherwise stale claims for deliberately filing *seriatim* lawsuits flouting the administrative exhaustion requirement.

For the reasons specified herein, plaintiff is not entitled to tolling.   Plaintiff's retaliation claims, as well as all other section 1983 claims against defendant in this lawsuit, are barred by the three-year statute of limitations.

## II.     State-Law Claims

Plaintiff's state-law claims require little discussion.   Paragraphs 31 and 32 of plaintiff's amended complaint allege that defendant's actions violated Article I §§ 2, 5, 17 and 23 of Michigan's Constitution, Mich. Comp. Laws § 750.478 (misdemeanor "willful neglect of duty") and Mich. Comp. Laws § 752.11 (misdemeanor "abuse of authority").   Plaintiff lacks standing to bring a criminal action against defendant. *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973). Plaintiff's claims are for monetary damages against defendant in his "Individual Capacity."  (docket # 21, ¶ 4).   Michigan law does not provide a cause of action for monetary damages against an individual government employee under Michigan's constitution. *See Jones v. Powell*, 612 N.W.2d 423, 426 (Mich. 2000); *Bennett v. Detroit Police Chief*, Nos. 262124, 262188, __ N.W.2d __, 2006 WL 3733225 (Mich. Ct. App. Dec. 19, 2006); *Neal v. Department of Corrections*, Nos. 253543, 256506, 2005 WL 326883, at * 5 (Mich. Ct. App. Feb. 10, 2005) ("Regardless of the [Michigan] constitutional rights allegedly violated, damage remedies against individual government employees

-31-

for those constitutional violations do not exist."); *see also Anderson v. City of Monroe*, No. 05-cv-70255, 2006 WL 2077596, at * 5 (E.D. Mich. July 24, 2006); *HRSS, Inc. v. Wayne County Treasurer*, 279 F. Supp. 2d 846, 851 (E.D. Mich. 2003).  Accordingly, defendant's Rule 12(b)(6) motion will be granted on all plaintiff's purported state-law claims.

### Conclusion

For the reasons set forth herein, defendant's motion (docket # 24) will be granted and plaintiff's complaint be dismissed with prejudice.

Date:   March 21, 2007            /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  CHIEF UNITED STATES DISTRICT JUDGE